IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
SMALL CLAIMS DIVISION

| | |
|---|---|
| MARIBEL NETO,<br><br>*Plaintiff,*<br><br>vs.<br><br>MEDLYTIX, LLC,<br><br>*Defendant.* | Case No.: _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Maribel Neto** ("**Ms. Neto**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Medlytix, LLC** ("**Medlytix**" or "**Defendant**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Ms. Neto against the Defendant for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and Section 34.01, Florida Statutes.

3. The Defendant is subject to the provisions of the FCRA and are subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4. Venue is proper in Hillsborough County, Florida, under Section 47.051, Florida Statutes, as the acts complained of were committed and/or caused by the Defendants within Pasco County.

### PARTIES

5. **Ms. Neto** is a natural person residing in Lithia, Hillsborough County Florida.

6. Ms. Neto is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. **Medlytix** is a Georgia limited liability company with a primary business address of 675 Mansell Road, Suite 100, Roswell, Georgia 30076.

8. Medlytix's Georgia's registered agent is Arvind Krishnaswami, 675 Mansell Road, Suite 100, Roswell, Georgia 30076.

9. Medlytix bills itself as a healthcare consulting and technology company specializing in the field of predictive analytics.

10. Medlytix is a Reseller of Reports from Consumer Credit Reporting Agencies ("**CRAs**") within the meaning of 15 U.S.C. § 1681a(u) in that it: (a) for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole, or in part, in the practice of assembling and merging consumer information contained in the database of another consumer reporting agency for purposes of furnishing such information to a third party; and, (b) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

## FACTUAL ALLEGATIONS

11. At some point prior to October 2023, Ms. Neto required medical treatment.

12. The medical provider charged Ms. Neto for services not covered by insurance.

13. On information and belief, Ms. Neto's medical care provider contracted with Medlytix for services relating to maximizing the medical care provider's profits.

14. Alternatively, Ms. Neto's account was sold to a successor-in-interest, or placed for collection on contingency with a third-party debt collection agency, who then hired Medlytix.

15. On October 3, 2023, Medlytix requested a consumer credit report regarding Ms. Neto from Equifax.

16. Medlytix stated it had permissible purpose to obtain Ms. Neto's report for "account review" purposes.

17. This request was recorded by Equifax Information Services ("**Equifax**"), a nation-wide CRA. **SEE PLAINTIFF'S EXHIBIT A.**

18. The FCRA, 15 U.S.C. § 1681a(d)(1), defines a "Consumer Report" as "*any* written, oral, or other communication of *any* information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living..." (emphasis added).

19. The information contained in the Equifax report obtained by Medlytix, regarding Ms. Neto, included her current and past employment, and the classification of her current and past residence.

20. Information regarding a consumer's employment and residence bears on the consumer's mode of living and credit worthiness.

21. The consumer report obtained by Medlytix, regarding Ms. Neto, thus meets the definition of a "Consumer Report" under the FCRA.

22. Ms. Neto has no current account with Medlytix.

23. Ms. Neto has never had an account with Medlytix.

24. Thus, Medlytix had no need to review a credit report to determine if Ms. Neto continued to meet the qualifications of an open-ended account.

25. Medlytix is not registered or licensed in Florida to act as a debt collector.

26. Upon information and belief, Medlytix does not engage directly in debt collection activities of its own.

27. Medlytix had no need for Ms. Neto's credit report *for its own purpose.*

28. Medlytix had in its possession the name of Ms. Neto's medical care provider or its successor-in-interest, at the time of its requests for Ms. Neto's consumer report.

29. The FCRA, at 15 U.S.C. §§ 1681e(e)(1)(A) and 1681e(e)(2)(A)(i), requires that any person who procures a consumer report for purposes of reselling the report – or any information in the report – disclose to the CRA the identity of the end user of the information.

30. When a CRA is properly informed that a request for a report is made on behalf of a third-party, the record of the inquiry indicates both the name of the entity requesting the report *and* the name of the entity for whom it was requested.

31. Medlytix, when requesting the consumer report regarding Ms. Neto, failed to disclose to Equifax that it was acting as a reseller of reports.

32. Medlytix similarly failed to disclose the name of the entity to which Medlytix furnished the information.

33. Medlytix thus deprived Ms. Neto of the knowledge of the identity of the true party obtaining her personal information.

34. On information and belief, Medlytix requests thousands of reports from Equifax each month concerning consumers, in each instance acting as a reseller of information to its clients.

35. Pursuant to the FCRA, no permissible purpose exists for an entity to obtain a credit report if that entity has no connection with the consumer, is not collecting a debt resulting from a credit transaction with the consumer, and has no other connection to the consumer other than being asked to obtain it, unless such entity is a reseller of reports – in which case it is required to disclose the party on whose behalf it is acting.

36. As aforementioned, Ms. Neto has no account directly with Medlytix.

37. A *Credit Transaction* involving the consumer is one in which the consumer voluntarily participates and enters into an agreement to receive goods or services in advance of payment, with the consent of both parties. *See Pintos v. Pacific Creditors Association*, 504 F. 3d 792, 798 (9th Cir. 2007); *Miller v. Trans Union LLC*, No. 06 C 2883 at *7 (N.D. Ill. Feb. 28, 2007); *Rodriguez v. Experian Info. Sols., Inc.*, Case No. C15-01224RAJ, at *9 (W.D. Wash. Jul. 25, 2016).

38. Ms. Neto's payment for medical services was due immediately upon provision of such services.

39. Thus, Ms. Neto was not involved in any credit transaction relating to her medical services.

40. Medlytix thus had no permissible purpose to obtain Ms. Neto's consumer report from Equifax, unless Medlytix was acting as a Reseller.

41. The Defendant's conduct in failing to disclose the identity of the true end user of the information contained within Equifax's consumer report has deprived Ms. Neto, and thousands of other consumers, of the knowledge of who has the highly personal and confidential information contained within an Equifax consumer report.

42. Ms. Neto has also suffered severe distress in knowing that someone – but not who – is in possession of the highly personal and confidential information contained within an Equifax consumer report.

43. Ms. Neto has hired this law firm to represent her in this matter and is obligated to pay its reasonable fees.

## COUNT I
## VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681e(e)(1)(A)

44. Ms. Neto adopts and incorporates paragraphs 1 - 43 as if fully stated herein.

45. Medlytix violated **15 U.S.C. § 1681e(e)(1)(A)** when it obtained Ms. Neto's consumer report from Equifax, while acting as a reseller of the information therein, without disclosing to Equifax the name of the entity for which it was requesting the report.

46. Medlytix's actions and omissions were willful and intentional, as it knew, or reasonably should have known, of its duty to disclose the name of the entity for which it was requesting the report, and it intentionally failed to disclose this information.

47. Medlytix's actions exhibited a reckless disregard for the rights of a consumer since it should have reasonably known that its failure to disclose the name of the entity for whom it was requesting a report would leave the consumer without knowledge as to who was actually receiving her private and personal information.

48. Medlytix is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Neto's actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

49. Alternatively, Medlytix's conduct was negligent, and Medlytix is therefore liable, pursuant to 15 U.S.C. § 1681o, for Ms. Neto's actual damages.

**WHEREFORE,** Ms. Neto respectfully requests this Honorable Court to enter judgment against Medlytix for:

   a. The greater of statutory damages of $1,000.00 per incident and Ms. Neto's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Ms. Neto's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

  d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA - 1681e(e)(2)(A)(i)

50. Ms. Neto adopts and incorporates paragraphs 1 - 43 as if fully stated herein.

51. Medlytix violated **15 U.S.C. § 1681e(e)(2)(A)(i)** when it obtained Ms. Neto's consumer report from Equifax, while acting as a reseller of the information therein, without disclosing to Equifax the name of the entity for which it was requesting the reports.

52. Medlytix's actions and omissions were willful and intentional, as it knew, or reasonably should have known, of its duty to disclose the name of the entity for which it was requesting the report, and it intentionally failed to disclose this information.

53. Medlytix's actions exhibited a reckless disregard for the rights of a consumer since it should have reasonably known that its failure to disclose the name of the entity for whom it was requesting a report would leave the consumer without knowledge as to who was actually receiving her private and personal information.

54. Medlytix is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Neto's actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

55. Alternatively, Medlytix's conduct was negligent, and Medlytix is therefore liable, pursuant to 15 U.S.C. § 1681o, for Ms. Neto's actual damages.

**WHEREFORE,** Ms. Neto respectfully requests this Honorable Court to enter judgment against Medlytix for:

  a. The greater of statutory damages of $1,000.00 per incident and Ms. Neto's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Ms. Neto's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

    d.    Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Neto hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **January 3, 2024,** by:

**SERAPH LEGAL, P. A.**

/s/ *Bridget L. Scarangella*
Bridget L. Scarangella, Esq.
Florida Bar No.: 1022866
BScarangella@seraphlegal.com
2124 West Kennedy Boulevard, Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## EXHIBITS

A    Plaintiff's Equifax Consumer Disclosure, November 7, 2023, Inquiry Excerpt

# EXHIBIT A
## Plaintiff's Equifax Consumer Disclosure –November 7, 2023 – Inquiries

